IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA                     :

                                         :

v.                                           :   Criminal No. DKC 13-650-3

                                         :

ANTONIO EDWARDS                              :

                                         :

**MEMORANDUM OPINION**

Defendant Antonio Edwards filed a second motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), (ECF No. 444), and several supplements (ECF Nos. 453, 477, 480).[1]  The accompanying motions to seal (ECF Nos. 452, 469, 473, 476, 479) will be granted because the personal medical information contained in the submissions should remain confidential except as recited herein.  For the following reasons, the motion for a reduction in sentence will be denied.

## I.   Background

Mr. Edwards is serving an aggregate sentence of 20 years for convictions for conspiracy to interfere with commerce by robbery (Count One), conspiracy to possess with intent to distribute more than 500 grams but less than 5 kilograms of cocaine (Count Two),

---

[1]  Mr. Edwards also filed other papers that the Clerk docketed as supplements.  ECF No. 446 are medical records and ECF No. 447 is the Bureau of Prison's response to Mr. Edwards' health complaint and other documentation supporting his position.

conspiracy to possess a firearm in furtherance of a drug trafficking crime and crime of violence (Count Three), possession of a firearm in furtherance of a drug trafficking crime and crime of violence (Count Four), and being a felon in possession of ammunition (Count Five).  He was determined to be both a Career Offender and an Armed Career Criminal and sentenced under the Armed Career Criminal Act ("ACCA").  His projected release date is October 14, 2030.

Mr. Edwards' first motion for compassionate release was denied on January 6, 2022, after the court carefully weighed the seriousness of the offense conduct and his criminal history against his health conditions.  (ECF No. 428).  The instant motion and supplements also cite Mr. Edwards' declining health.  According to the renewed motion filed December 4, 2023, Mr. Edwards suffers with hypertension, high acid levels in his stomach, and asserts that he has a terminal illness.  He takes prescriptions to treat a blockage in his small intestines, hydrocele, a breathing disorder, and chronic pain.  He also argues that changes in the law have created a sentencing disparity in that if he were sentenced today, he would not have received the same sentence.

His attorney filed a supplement on February 18, 2025.  (ECF No. 453).  He reports that Mr. Edwards has been transferred to FCI

Butner Medium II, that he suffers with untreated rectal bleeding, is obese, suffers with sleep apnea, osteoarthritis in both knees which limits his functional capacity, and chronic urinary tract infections.  In addition, he was recently diagnosed with congestive heart failure.  He was hospitalized in February 2025 for fluid build-up around his heart and lungs.  Mr. Edwards asserts that he cannot receive adequate medical care while incarcerated.

The government filed an opposition, (ECF No. 470).  It attaches Mr. Edwards' Disciplinary Record showing a number of infractions, including introducing suboxone into a secured facility, fighting with another person, disruptive conduct and refusing to obey an order.  The Government argues that the Bureau of Prisons ("BOP") has consistently addressed his medical concerns and provided care.  Thus, he has not shown an extraordinary and compelling reason for compassionate release.  The BOP has four care levels and Mr. Edwards is classified as Care Level Three.  He was recommended to have a colonoscopy in March 2024.  But, due to his congestive heart failure, was first advised to get clearance from a cardiologist.  Although a pacemaker was recommended, Mr. Edwards refused.  A dietician was provided to Mr. Edwards to help him lose weight.  Despite being counseled to avoid certain foods, Mr. Edwards' commissary records indicate that he continues to make

3

food choices against medical advice.  In addition, he was provided Ozempic but was non-compliant such that medical staff discontinued his prescription.  Heart surgery cannot be considered until he is 380 pounds or less.  With respect to his rectal bleeding, medical records show that he is scheduled for a colonoscopy and that the bleeding is likely the result of hemorrhoids.  In addition, his treating physician has "a low suspicion for high-risk prostate cancer" and has scheduled a cystoscopy.  Until Mr. Edwards loses weight, his treatment options beyond medication management are limited.  He is housed at FCI Butner Medium II which has a nearby medical facility, FMC Butner, and Duke Regional Hospital is also close.

The government also contends that Mr. Edwards cannot attack the validity of his designation as an Armed Career Criminal and his 924(c) conviction in a compassionate release motion.

Mr. Edwards disclosed that he has no femur or hip bone and is currently wheelchair dependent because of joint pain and obesity. Although plans to transition him to a walker are in the works, he is able to complete his ordinary activities of daily life using a wheelchair.

In a supplement filed in November 2025, Mr. Edwards reported that he has been hospitalized twice in the prior 70 days, once for

a single day when he fell trying to get into his wheelchair, and next for a week at the beginning of the month when he complained of shortness of breath and chest discomfort. (ECF No. 477). He says that the medical records show worsening of his congestive heart failure. He has also developed an "atria blood clot" and gained 30 more pounds. In an additional supplement filed January 6, 2026, (ECF No. 480), Mr. Edwards reports that he suffered a heart attack that required 30 minutes of CPR and multiple applications of a defibrillator. He was told that there is a concern that he may need to replace his Automatic Implantable Cardioverter Defibrillator.[2]

Mr. Edwards worries that he will die in prison. Currently, Mr. Edwards has served about 12 and ½ years on his 20-year sentence.

---

[2] The Medical Records seem to reflect that a "BIV ICD" was in fact implanted on December 17, 2025. (ECF No. 480-1, at 27.) That record contains the notation "#s/p BIV ICD" and recites the post-op recommendations. Counsel has not provided any interpretation of the medical records. It appears that BIV means "Biventricular" and ICD refers to an implantable cardioverter-defibrillator. "An implantable cardioverter-defibrillator, also called an ICD, is a small battery-powered device placed in the chest. It detects and stops irregular heartbeats, also called arrhythmias. An ICD constantly checks the heartbeat. It delivers electric shocks, when needed, to restore a regular heartbeat." Implantable cardioverter-defibrillators (ICDs) - Mayo Clinic. Curiously, later entries in the medical record said to "follow up in 1-2 weeks for possible AICD placement." (ECF No. 480-1, at 14).

The Government's response to the most recent submissions again opposes release, and contends that, while his health circumstances are regrettable, he receives adequate and lifesaving medical care, "notwithstanding his non-compliance with treatment." He is housed at a facility that specializes in providing medical care.  He has a significant criminal and disciplinary record.  The Government also "notes" that he has not sought compassionate release from the BOP in 2025 or 2026, although it does/did not raise the failure to exhaust administrative remedies.

The government argues that, even if the court finds that Mr. Edwards satisfies the criteria for finding an extraordinary and compelling reason, release should be denied based on other factors such as the seriousness of the offense and his criminal history. Mr. Edwards qualified as an Armed Career Criminal and a Career Offender based on his criminal history.  His sentencing guidelines range of 420 months to life far exceeded the 240-month sentence he received.   Moreover, Mr. Edwards received infractions for fighting, introducing drugs/alcohol into the prison, refusing to obey an order, and engaging in disruptive conduct that interferes with the institution's security.

Mr. Edwards re-iterated in his reply that his medical impairments limit his mobility, degrade his qualify of life, and

6

result in frequent hospitalization.  He is not a candidate for surgery because he is obese.  He contends that, due to his health, he is not a danger to the community, that his conditions are difficult to manage in prison and that the BOP has difficulty addressing his medical needs.  He has participated in 27 education courses, mental health treatment, and substance abuse treatment.  In addition, Mr. Edwards attached a handwritten reply asserting that the sentence he would receive today is different than the sentence received.  He states that conspiracy and "attempt" crimes no longer qualify as crimes of violence so they cannot support an ACCA designation.  Moreover, he says that he is innocent of the conviction for possession of a firearm in furtherance of a drug trafficking crime and crime of violence (Count Four).

## II.  Standard of Review

Ordinarily, a court may not alter a sentence after it is imposed.  There are limited exceptions, however.  One is pursuant to 18 U.S.C. § 3582(c)(1)(A), the compassionate release statute.  Under that statute, a court may reduce a defendant's sentence if there are "extraordinary and compelling reasons" for the reduction that are "consistent with applicable policy statements issued by the Sentencing Commission," and the § 3553(a) factors also support reduction.  18 U.S.C. § 3582(c)(1)(A).

A district court analyzes a compassionate release motion in two steps. First, it determines whether the defendant is eligible for a sentence reduction. *See United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023). To be eligible, the court must find that relief is warranted because of "extraordinary and compelling reasons" and "consistent with applicable policy statements issued by the Sentencing Commission." [*United States v.*] *High*, 997 F.3d [181,] 186[ (4th Cir. 2021)]; *see* § 3582(c)(1)(A)(i). Second, the court considers whether the 18 U.S.C. § 3553(a) sentencing factors support relief. *Bond*, 56 F.4th at 384; § 3582(c)(1)(A)(i).

*United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024).

The Sentencing Commission adopted a policy statement that was effective November 1, 2023:

> The Sentencing Commission has promulgated a policy statement, U.S.S.G. § 1B1.13, which attempts to define what may constitute "extraordinary and compelling reasons." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). The Sentencing Commission recently amended the policy statement. Effective November 1, 2023, the amended policy statement provides a non-exhaustive list of extraordinary and compelling reasons for reducing a sentence:
>
> (1)  the medical circumstances of the defendant, U.S.S.G. § 1B1.13(b)(1);
>
> (2)  the age of the defendant, U.S.S.G. § 1B1.13(b)(2);
>
> (3)  family circumstances of the defendant, U.S.S.G. § 1B1.13(b)(3);

> (4)  whether the defendant was a victim of abuse while incarcerated, U.S.S.G. § 1B1.13(b)(4);
>
> (5)  "other reasons," U.S.S.G. § 1B1.13(b)(5); or
>
> (6)  an unusually long sentence, if the defendant meets certain conditions, U.S.S.G. § 1B1.13(b)(6).

*United States v. Moore*, No. 4:15-CR-1, 2024 WL 4148646, at *2 (E.D.Va. Sept. 11, 2024).

For a defendant's medical condition to qualify as a compelling or extraordinary condition, it must meet one of the three circumstances set out in 1B1.13(b)(1):[3]

Medical Circumstances of the Defendant.—

> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (B) The defendant is—
> (i) suffering from a serious physical or medical condition,
> (ii) suffering from a serious functional or cognitive impairment, or
> (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of

---

[3] The fourth circumstance relates to public health emergencies or an outbreak of infectious disease.

the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

For an unusually long sentence to constitute a basis to consider compassionate release, a defendant who has served at least 10 years of the term of imprisonment may rely on a change in the law, other than a guideline amendment that is not retroactive, if he shows that the change in the law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." 1B1.13 (b)(6).

Finally, extraordinary and compelling reasons can be found to exist based on a combination of circumstances.  1B1.13(b).

### III. Discussion

#### A.   Medical Situation

Mr. Edwards' medical problems do not clearly fit within the three parameters set forth in the guideline manual.  He is not suffering from a terminal illness although he faces serious health

10

challenges.  He is receiving specialized care that, frankly, is attempting to ameliorate his conditions.  Mr. Edwards' own actions, to some extent, have thwarted those efforts.  Finally, again, while his medical conditions are serious and Mr. Edwards is wheelchair reliant, he is still able to provide self-care within the environment of a correctional facility.  Some of the conditions could be helped by treatment, were he more compliant with medical recommendations.  The record is replete with notations that Mr. Edwards has rejected or ignored the medical advice he has received concerning his weight and medications.

### B.    Overly Long Sentence

Trial testimony showed that Mr. Edwards conspired with under-cover law enforcement officers Rogers and Weathers and his "crew" Marvin Bowden, Shane Hare and Gregory Williams to rob what he believed to be a stash house of a Mexican cartel.  Mr. Hare and Mr. Williams were to enter the stash house and shout "police" and secure an automatic weapon they were told was there.  Mr. Bowden and Mr. Edwards would follow and secure the guards using zip ties, or duct tape, or alternatively, shoot them below the waist.  Mr. Edwards also proposed a "Plan B" which was to pretend to rob under-cover officer Rogers of 5 kilograms of cocaine.  The crew met under-cover officers Rogers and Weathers on May 16, 2023, at a

storage facility and confirmed that they were ready to proceed with either the original plan or Plan B.   ATF agents then surrounded the group and made arrests.

Mr. Edwards' two co-defendants, who were not found to be Armed Career Criminals and whose criminal histories were far less extensive, received aggregate sentences of 132 and 150 months. Mr. Edwards, whose guidelines were much higher, received an aggregate sentence of 240 months.   At the threshold, given the significant variance in the initial sentence, it is not even apparent that this constitutes a gross disparity between his actual sentence and the one he would receive today, without the enhancements in the guidelines.

At the time of sentencing, Mr. Edwards' criminal convictions scored 18 points.   Because he was on supervised release at the time of the offense two more points were added for a total of 20 criminal history points.   Pursuant to the Sentencing Guidelines at U.S.S.G. Chapter 5, Part A, 13 or more criminal history points establishes a criminal history category of VI.   He was determined to be a Career Offender pursuant to U.S.S.G. §4B1.1 because he had three prior felony convictions involving controlled substance offenses and one prior conviction for a crime of violence.   And, because this offense included a conviction for Felon in Possession

12

of a Firearm, and Mr. Edwards had four prior convictions involving a violent felony or serious drug offense, he was also determined to be an Armed Career Criminal within the meaning of § 4B1.4.  With an offense level of 37 and a criminal history category of VI, Mr. Edwards' guidelines calculated 420 months to life on Counts 2, 4, and 5, and 240 months on Counts 1 and 3, plus 60 years consecutive. Even without the Career Offender Guideline, his offense level was 30.  At Criminal History VI, the range would be 168-210 months, plus, of course, the consecutive 60 months for four.  The court sentenced Mr. Edwards to 240 months, at the time, the mandatory minimum.  That sentence remains well within the range for offenders who commit these crimes with this criminal history.

### C.    Analysis of 3553(a) Factors

Even if the circumstances presented by Mr. Edwards consisting of his medical condition and the length of his sentence were to be considered extraordinary and compelling, release would not be appropriate.  The offense conduct and Mr. Edwards' criminal history are serious. His disciplinary history remains troubling. At the time Mr. Edwards filed this motion, he was designated to FCI Phoenix.  He has since been moved to Butner Medium II FCI. Moreover, he has not availed himself of the BOP's assistance

13

provided to lose weight thereby contributing to his own risk. Immediate release will not relieve his medical conditions.

After full review, the court concludes that reduction in his sentence is not warranted.  His medical issues are managed adequately by Butner Medium II FCI.  The goals of punishment, deterrence, and respect for law would not be served by release or a sentence reduction.

For the foregoing reasons, Mr. Edwards' motion for compassionate release and supplements will be denied.  A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge

14